Good morning. May it please the court. My name is Ben Frazier, and along with my co-counsel, Cassidy Young, we represent the appellant Mrs. Rosemary Garity. I'll be using six minutes to address issues pertaining to the national union's liability, and my co-counsel will be using six minutes to address issues pertaining to the local union's liability and its successor in interest. You'll be reserving three minutes for rebuttal. At the heart of this case, summary judgment was improper. These tribal issues of fact remain as to whether or not the national can be held liable for disability discrimination against Mrs. Garity. Evidence presented creates tribal issues of fact under two theories of liability, vicarious liability and direct liability. First, when drawing the evidence in the light most favorable to Mrs. Garity, the national's decision to directly and prematurely involve itself in the local's grievance process creates a tribal issue of fact as to their role in the local's discriminatory actions taken against Mrs. Garity. This decision is highlighted by the fact that part of the local's discrimination against Mrs. Garity included a stonewalling of grievances, which provided her the only opportunity to relieve the discrimination which was occurring at the local level. However, after the national took over the grievance process, things did not improve, and evidence demonstrates that the national didn't even look at many grievances nearly a year later. This creates a tribal issue of fact as to whether or not the national supported and or ratified the local's discriminatory actions. When Agent Ibarra did rule on a grievance, he simply marked it as resolved and claimed that there was not sufficient evidence for him to make a ruling. However, when he was pressed about this, he said he could have just requested the information. This decision not to properly investigate a grievance which outlined Mrs. Garity's severe physical disabilities and the discrimination that was occurring at the local level creates a tribal issue of fact as to whether or not the national supported and or ratified the local's discrimination. Additionally, the national's decision to appoint James Scoggins, who was a convicted adjudicator, to be in charge of the grievance process creates a tribal issue of fact as well. Agent Scoggins outlined his prejudicial animus for Mrs. Garity, specifically because she was disabled, calling her a rehab employee. This decision by the national to appoint someone who was supposed to be helping Mrs. Garity but instead harbored prejudicial feelings about her because of her disability also creates a tribal issue of fact as to whether or not the national supported and encouraged the local's discriminatory actions. This also creates a tribal issue of fact under the direct discrimination prong of liability. This is because, when drawing all the evidence in light, most favorable to Mrs. Garity, a reasonable jury could conclude that Agent Scoggins was prejudicial against Mrs. Garity because of her disability, as stated before, calling her a rehab employee. And the national's decision to appoint him to be in charge of the grievance structure creates a tribal issue of fact as to whether or not they directly discriminated against Mrs. Garity because of her disability. Additionally, the appellant asked this court to remand this case back to the district court to apply a new standard of vicarious liability that more adequately reflects the unique circumstances in this case. In every case cited by both the district court and the appellee, there is both a national union and a local union present. However, after the local union was erroneously dismissed, only the national union remained in the case, and Garity only was able to seek remedy against them. A more adequate standard would be that a national union is held liable for the discrimination or liabilities of their local union if the local is to dissolve and they fail to appoint a successor in interest. And where do we come up with that theory? Your Honor, this is just a new theory that would better fit the unique circumstances. It has to be grounded in something. Is that grounded in the statute? Is there a case? You've got to link it to something. Correct, Your Honor. We just can't go around making up new rules. Yes, Your Honor. There's actually two cases that have dealt with similar circumstances where a local union has been dissolved and someone is seeking a remedy against the national union. One was in the California Court of Appeals, which was Lawless v. Brotherhood. And another one was in a Michigan federal district court, Michigan Teamster v. Bufalino. And in both cases, those courts reasoned the situation more similar to a corporate transfer where one entity was dissolved without appointing a successor in interest. And in both cases said that by dissolving the local and assuming control of the assets, the parent organization was actually assuming responsibility. And so from this and from the Nevada statute covering corporate transfers, which is Nevada Statute 78.585, this is where we are deriving the rule and proposing it to this court. Okay, your time is up. Thank you, Your Honor. I would like to give the rest of my time to my co-counsel. Yes. Good morning, and may it please the court. My name is Cassidy Young, and I will be discussing the district court's error in granting the motion to drop the local union from this case. This motion was granted an error because it violated Garrity's due process rights, and it allowed the local to voluntarily dismiss itself from this case. Thus, we ask this court to remand the case and allow Garrity to bring her claims based on the local's misconduct. After being named a defendant in this case, the local dissolved and filed a procedurally improper motion to be dropped from the case under Rule 21 of the Federal Rules of Civil Procedure. The Constitution affords litigants a meaningful opportunity to respond to such motions, and the Nevada District Court's own local rule provides litigants 14 days to respond to these motions. However, the district court did neither. It granted this motion four days after it was filed in a two-sentence order that dismissed the local from this case. Garrity's timely response to the motion was entered into the record, but was ignored. The due process violations inherent in this procedure are so clear that the state union, who now reveals itself to be the successor to the local, does not make a single attempt to defend this process on its merits. Instead, it argues that these errors should be ignored because Garrity waived them pursuant to the Munoz rule. However, the purpose of the Munoz rule, as this court stated in In Re Cellular 101, is to protect the integrity of the court. But in this case, the integrity of the court would be put at far greater risk by allowing the procedure that took place below to stand. That procedure allowed a defendant to voluntarily dismiss themselves from a case in a manner that seemed routine in a two-sentence order under a rule that is never used for this purpose. Additionally, this court has held consistently that where arguments are deemed waived, the court has discretion to hear them to prevent a miscarriage of justice. And that exception is especially applicable here, where Garrity's due process rights are at stake. As the Supreme Court has instructed multiple times, courts should avoid finding a waiver of fundamental rights and should not acquiesce in... Let me ask, can I ask you a question? Do you contend, is it your contention that the local union did not have a proper basis to dissolve itself? No, Your Honor. Or that the dissolution was improper in some way? No, Your Honor. The dissolution, our contention is not that the dissolution itself was improper. Our contention is that the motion that was filed to remove the local from the case was granted erroneously because even though the local dissolved, the claims shouldn't disappear because the local dissolved. As this court recognized in Strotec versus Air Transport Association of America, litigants aren't able to avoid liability by dissolving. And that's exactly what happened in this case. And part of the error in granting the motion without giving Garrity a chance to respond to it was that the court never inquired into who would be the local successor, whether the local had insurance, and how these claims could move forward despite the local's dissolution. And our contention is not to bring the local back from the dead. It's simply that it was unclear at the time who the successor was. Moreover, at that time, it appeared that the national was continuing to defend against these claims on behalf of the local. And that claim is supported by the fact that in the motion, the local stated that the national was holding its funds in the event of a finding of liability against the local. And that statement is so crucial here because it was the only statement in the motion that went to the local's liability. And it suggests that despite the local's dissolution, that liability would continue to be adjudicated. Moreover, in the motion to dismiss that the national filed, it defended against these claims indiscriminately without distinguishing between the claims against itself and the claims against the local. And our point is simply that when you look at all of this procedure, it is so unfair and unjust to Ms. Garrity and violates her due process rights that in this case, there should be an exception to this Munoz rule because the purpose of the rule is to protect the integrity of the court. And here, especially when this union has no argument as to the merits of this procedure, that rule, the purpose of that rule would be undermined by upholding a waiver of these claims because the violations are so clear. And we are simply asking for Garrity to have her day in court and to not allow a litigant to escape liability by dissolving and then voluntarily dismissing itself from the proceeding. And with that, I would like to reserve the remainder of my time for rebuttal. That's fine. Okay. Now, I believe on the defense side, there's going to be a sharing of time as well. That's right, Your Honor. May it please the court, I'm Joni Jacobs. I'll be representing the appellee, the APWU, which I'll be referring to as the national. And I'd like to reserve five minutes of our time for Mr. Rosenfeld to present the argument for the intervener, the Nevada State APWU. Okay. Go ahead, Ms. Jacobs. Thank you. Your Honors, this is a disability discrimination case where despite appellant submitting more than 6,300 pages of exhibits, she has not pointed to any evidence that establishes a tribal issue of fact that disability discrimination occurred. Judge Gordon carefully reviewed her evidence and drew all reasonable inferences in her favor. Judge Gordon found that there was no tribal issue that the national, the only defendant before him, was liable under the longstanding carbon fuel standard because she did not show that it instigated, encouraged, supported, or ratified any disability discrimination by the local. Judge Gordon also found there was no tribal issue that the national itself discriminated against the appellant because she pointed to no evidence establishing that it was motivated by hostility toward her disability when acting on her grievances. And those grievances did not involve claims of disability. They involved a myriad of other complaints such as work assignments, the slowing of the mail, and not paying her overtime to file grievances. Appellant has not pointed to any evidence that shows that the national treated her differently than any other bargaining unit member. It actually treated her better. But no reasonable inference can be drawn from the fact that by helping her, they ratified the, quote, bad acts of the local. A contrary inference is reasonable. Appellant muddies the waters by arguing that the district court was wrong to dismiss the local from the case. This is a tacit admission that her claims are really against the local and not the national. But in 2013, she appealed the order dismissing the local from this action. And her court appointed counsel abandoned that issue on appeal. And the remand mandate named the national as the only defendant. Strategic litigation choices have consequences. And because of the strategic litigation choices appellant's counsel made in the earlier appeal, the dismissal of the local is not properly before you. Now the national acknowledges that a de novo standard of review applies to Judge Gordon's order granting summary judgment. But de novo review does not mean that appellant gets a complete do-over. Orders granting summary judgment are not to be overturned based on arguments and evidence litigants did not raise below. As this court stated in Carmen and Jacobson, doing so amounts to requiring the district court to act as the non-moving party's attorney. To become a player in the adversary process. And this is unfair to the district court, to other litigants whose cases may be delayed while the court acts as the non-moving party's advocate, and the moving party who is deprived of the opportunity to be heard on evidence and arguments not raised in opposition to summary judgment. Now more specifically, appellant says that in her reply brief that even if the mandate rule prohibited the return of the local into the case as a party, it would not prevent this court or the district court from holding that some other entity should remain accountable for the actions of the local. We agree that it would not have prevented her from arguing that to Judge Gordon. But we disagree that she can argue that to this court because she did not argue successor liability to Judge Gordon. The court should not overturn Judge Gordon's decision because of arguments she's raising for the first time on appeal. And per the cases that we cite in our brief, this rule applies to pro se litigants such as appellant. In any event, the judicial estoppel appellant asked for does not apply. The national did not take inconsistent positions in this litigation. It never argued that it was the successor to the local. And the district court did not accept an earlier position of the national that it now seeks to disavow. And under both Hamilton and Masayevsva, this destroys judicial estoppel. And the national made no misrepresentations to the district court in connection with successorship. It accurately stated that the local members, including appellant, voted to dissolve the local and be represented for purposes of grievances by the Nevada State APWU. It also accurately said that the Nevada State APWU, as the successor to the local, was charged with filing the termination reports with the Department of Labor and the IRS, which it did. And while the national did tell the court that it was holding the local's bank account in escrow, it took the position that by doing so, it was not obligated to pay any debts of the local out of its own assets. After remand, appellant had all the information she needed to argue a successor theory of liability against the national. In fact, it's the exact same information and documents she relies upon in this appeal. But she did not argue that the national was the successor. She argued only vicarious liability, which is a separate and distinct theory of liability. Indeed, she raised the issue of how the local's money was handled as evidence of vicarious liability, not successor liability. And the reason why she didn't argue that the national was the successor was because she knew it was not. She knew that the members of the local had voted to go with the state. She participated in that vote. And she knew that the DOL terminating letter filed by the state shows that the local dissolved to the state. But having lost on her vicarious liability theory, appellant now argues that the national should be judicially estopped from denying that it is the successor. But under MAGNICOM, she forfeited judicial estoppel because she did not raise it below. Appellant claims this rule should be ignored because successor liability was not ripe until Judge Gordon granted summary judgment on vicarious liability. But this simply is not true. Her argument is based on her assumption that as the only remaining defendant, the national would defend the conduct of the local. But her assumption was not reasonable. It was clear from the outset that the national contended that it was not liable for the local's conduct. That was one of its affirmative defenses to her amended complaint. It also made clear in the papers filed on the motion to drop the local that it did not contend with the successor. So there was no reason to expect that it would defend the local's conduct. In any event, it was incumbent on appellant to raise to Judge Gordon every theory of liability she thought applied. And her argument to the contrary is tantamount to asking for piecemeal appeals. Let me try vicarious liability, and if that doesn't work, then I'll appeal and ask for a chance to argue a different theory of liability on remand. And this should not be allowed. There will be no miscarriage of justice by holding appellant to the strategic choices of her appointed counsel and the rule that a litigant waives arguments that were not raised below. Nothing precluded appellant from opposing summary judgment by arguing that the national was the successor. And had she done so, the national would have argued why it wasn't, and Judge Gordon would have ruled on that issue. It is prejudicial to Judge Gordon and the national to overrule his decision because of arguments appellant didn't make to him. Now as to the issue of vicarious liability, the Ninth Circuit already resolved this issue against appellant in her earlier duty of fair representation case. And while different causes of action are involved in the two cases, the same carbon fuel standard applies. Appellant presents no different set of facts to justify a different result in this case. Instead, she argues that carbon fuel shouldn't be applied because the local was dissolved. But this is just a backdoor way to raise her successor liability argument. Judge Gordon cannot be faulted for applying carbon fuel when vicarious liability was the only theory of liability that appellant put before him. And Judge Gordon correctly found no evidence to establish a tribal issue of fact on vicarious liability. He looked at appellant's 111 pages of notifications to the national and found that not only did they not notify the national about any claimed discrimination or retaliation by the local, but also that at best they showed constructive knowledge, which is not enough to meet carbon fuel. Appellant points to no evidence showing that the national knew about or ratified discrimination by the local that was based on her disability. She also pointed to no evidence of causation of the national's direct liability. All she's done is contend that because the national knew she was disabled and did not handle the grievances she wanted, that's enough. But mere notice of her disability does not form circumstantial evidence that it motivated adverse actions. She was required to point to specific evidence in the record from which reasonable inferences could be drawn, and she does not do that. Appellant was not shy about complaining about mistreatment. She filed 6,300 pages of exhibits that she purports show mistreatment. If there was evidence of disability discrimination, Judge Gordon would have found it. So this appeal should be dismissed, and Judge Gordon's thorough and well-reasoned decision and order-granting summary judgment should be affirmed. Thank you. Okay. Thank you, Counsel. And Mr. Rosenfeld? Yes, Your Honor. David Rosenfeld for the Nevada State Postal Workers. Judge Paz, I think you hit the nail on the head with your question. And there's a document in the record that I think best explains what happened in this whole case, and that's an APWU supplemental exhibit of the record, Excerpt 226, which is Ms. Garrity's personal notes about what happened on May 10, 2012, eight years ago when the local dissolved. This is in Park, Nevada. It was an extremely small local. Nine people showed up at a restaurant. Nine members voted unanimously to dissolve the local. One of those members who showed up to vote to unanimously dissolve the local was Ms. Garrity. The local was dissolved. Nine members did. They also agreed and voted that they would transfer their membership to the Nevada State APWU as members-at-large who would then, after that date, represent them if they had grievances. And there was a debate about what to do with the $5,000 or $6,000 that was left over, and it was decided to contact the National to figure out what to do with it. There was some discussion about splitting it up among the members, except for Ms. Garrity because she'd gone to a convention and used local money to do it. Ultimately, as Ms. Jacobs pointed out in the record, it indicates the treasury money was given to the National Union to hold in Vastro. It went no other place. The local was dissolved because there were nine members who showed up, and when the DOL forms were filed, there were 16 members. This was a tiny little local, couldn't survive, had no reason to be in business, and the Nevada State local could then represent them in future proceedings. So that's what happened here. So then what happened was when the judge granted the motion to drop the local, he realized they dissolved. Ms. Garrity never questioned in any subsequent papers the dissolution. It's dead. It's gone. It doesn't exist. There's no remedy against an entity that no longer exists. Ms. Garrity, I guess, is arguing it should be brought back so that she and the other nine people voted to dissolve it to pay her some money. I just want to emphasize how this case has flipped totally. It's because experienced counsel looked at this case on the first appeal and said to Ms. Garrity, look, the local's dissolved. There's nothing you can do here. There's no remedy. We need to focus on the national union because they've got the treasuries. So she flipped her theory in the first case by abandoning her claim against the local, which had dissolved, and now said the national union was responsible for all this. Because to argue that the local continued to exist was inconsistent with the argument in the first appeal, but the national now was responsible. She then abandoned her claim against the local, and this court acknowledged that and put no two of the decision in 2016. So when the case goes back to the district court after the remand, she continues on her theory that it is the national union that is responsible for localism. And then when this court, the same law firm that is helping her in her appeal is appointed pro bono and then looks at the case and it writes its brief. We're flipping our position again, and now let's try to bring the local back in after they initially had said leave them out. So they write their supplemental brief in 2020. Now, eight years later, saying the local, which had dissolved, the nine members met in a restaurant, should now be brought back into the local, and that's why they're not out of state. A postal worker jumps in and intervenes and says, wait a minute. They were dissolved. Yes, we are a successor in a limited sense that nine members became members at large, and we've represented those workers since then. We may have been their successors, but we're not responsible for this. And for eight years, if you really thought we were responsible, you could have brought us in as a defendant or a litigant. Nothing was hidden because Ms. Garrity knew exactly what happened. She and the others had become members at large. This, frankly, would, in any other circumstances, be a Rule 38 case. I've never seen a case where an experienced appellate counsel, like Owens and Levy, flips its position totally the opposite and maintains some kind of strategic advantage and fails. But for the legal reasons suggested in our brief, and I don't really need to go over them, what happened was the local dissolved, had no assets, nothing was left. There's good reason to let them out. And the decision of the court below should be affirmed as to below. OK, thank you. All right. So there's a little bit of time for rebuttal on each side and for each of the plaintiff's law student advocates. Mr. Fraser or Ms. Young, are you going to do it? Yes, Your Honor. I'll be doing the entire rebuttal. OK, go ahead. First, I would just like to point out that appellee, everything cited in the nationals brief simply draws inferences in favor of the national rather than drawing the inferences in favor of Ms. Garrity, which is, of course, the standard at this point in the case. For example, appellant stated or appellee stated that the national treated Ms. Garrity better than they treated other employees. However, that is simply just drawing inferences of the evidence that we presented in favor of the national. For example, the national representatives made the affirmative decision to take over the grievance process by moving all of Ms. Garrity's grievances to step three. And then it repeatedly marked her grievances as resolved when there were clearly still problems. And so just because they made a decision that they don't make with other employees doesn't mean they were treating her better. They were treating her worse because they took over her grievance process and didn't help her. Moreover, in Scoggins' email, he called her a rehab employee and said that she is never satisfied until she gets exactly what she wants. However, Ms. Garrity is entitled to not be satisfied when what she wants is simply to be treated fairly and have her grievances heard. And that didn't happen in this case. Moreover, I would like to make it clear that we are not challenging the locals' dissolution in this case. The state has made an argument as to why the local was involved, and it was a small local union, and that's fine. But we are challenging the process through which the local was dismissed from this case and the claims against the local disappeared. And neither opponent has cited a case or made an actual substantive argument as to why that procedure was okay. And even if this court finds that the Munoz rule should apply, it's critical to keep in mind that this rule is supposed to protect the integrity of the court. And here, Garrity is left without an opportunity to bring these claims, and there is no substantive argument as to why that should be happening. These claims were dismissed in a procedure that was completely unfair to her. And also, the state union would not be prejudiced by arguing these claims now because they're purely issues of law and not of fact, which is another basis on which this court repeatedly has heard waived arguments. And so the state can make any argument now that it could have made on the prior appeal. And with that, I would like to – Garrity is simply asking for her day in court. Okay. Thank you. We appreciate your arguments this morning. The court's very appreciative of the work of the Pepperdine Law School Legal Clinic, and we'd like to thank the school for taking on our cases pro bono. I'm sure Ms. Garrity is very appreciative as well, so thank you. And thank you, counsel, for your fine arguments this morning. The matter's submitted at this time. Thank you.
judges: Paez, Owens, England